<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DOMINIC YACOVELLA,** : | |
| : | |
| Plaintiff, : | Civil Action No. 14-5484 (KM) |
| : | |
| v. : | |
| : | |
| **APPAREL IMPORTS, INC.,** *doing* : | |
| *business as Formalwear International*, : | |
| **ESPERANZA CAMPO, SANDRA** : | **OPINION** |
| **VALLEJO and ARTURO ALCANTARA,**: | |
| : | |
| Defendants. : | |

**I.   INTRODUCTION**

This matter comes before the Court by way of the motion of Defendants Apparel Imports, Inc. d/b/a Formalwear International, Esperanza Campo, Sandra Vallejo, and Arturo Alcantara to dismiss the Second Amended Complaint for: (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (2) improper venue pursuant to 28 U.S.C. § 1391, (3) forum non conveniens, and (4) failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Def.'s Mot. to Dismiss, Jan. 12, 2015, D.E. 14.   In the alternative, Defendants ask the Court to transfer the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404.   Plaintiff Dominic Yacovella ("Plaintiff") opposes the motion.   <u>See</u> Pl.'s Opp'n Br., Feb. 10, 2015, D.E. 18.

Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument.   For the reasons set forth below, the Court will transfer this matter to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).   The Court

will deny as moot the motion to dismiss for lack of personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim.

## II. BACKGROUND

Plaintiff worked as an independent contractor for Defendant Apparel Imports, Inc. d/b/a Formalwear International ("Formalwear"), which is located in Florida, from June 1999 until his termination on September 1, 2013. See Sec. Am. Compl., at ¶¶ 1, 22, 31, 47, Mar. 25, 2015, D.E. 24; see also Declaration of Arturo Alcantara ("Alcantara Decl."), at ¶13 & Ex. A, D.E. 14-4. Plaintiff alleges, inter alia, age discrimination, disability discrimination, and breach of contract.

Plaintiff is a sixty-six year old male residing in Royal Palm Beach, Florida. See id. at ¶ 20. Defendant Formalwear is a Florida corporation that makes and sells formal attire. See id. at ¶¶ 21-22; see also Alcantara Decl., at ¶¶ 4-5, Dec. 3, 2014, D.E. 14-4. Formalwear's sales and administrative offices are located in Florida, and it has a manufacturing plant in Colombia. See Alcantara Decl., at ¶ 5, Dec. 3, 2014, D.E. 14-4. Defendants Arturo Alcantara, Esperanza Campo and Sandra Vallejo (collectively, the "Individual Defendants") are officers and/or managers of Formalwear. See Sec. Am. Compl., at ¶¶ 23-24, Mar. 25, 2015, D.E. 24; see also Alcantara Decl., at ¶ 1, Dec. 3, 2014, D.E. 14-4; Declaration of Esperanza Campo ("Campo Decl."), at ¶ 1, Dec. 4, 2014, D.E. 14-3; Declaration of Sandra Vallejo ("Vallejo Decl."), at ¶ 1, Dec. 4, 2014, D.E. 14-2. Defendant Alcantara is Formalwear's Chief Executive Officer and has held that position for twenty-four years. See Alcantara Decl., at ¶ 1, Dec. 3, 2014, D.E. 14-4. Defendant Campo serves as President of Formalwear, and Defendant Vallejo is the General Manager. See Campo Decl., at ¶ 1, Dec. 4, 2014, D.E. 14-3; Vallejo Decl., at ¶ 1, Dec. 4, 2014, D.E. 14-2. The Individual Defendants are not New Jersey residents, and they live in the Florida area. See

Alcantara Decl., at ¶¶ 1, 4, 6, 38, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2.

Plaintiff alleges that Formalwear hired him in June of 1999 for a sales position, and that ultimately he became the National Sales Manager.  See Sec. Am. Compl., at ¶¶ 31, 33, Mar. 25, 2015, D.E. 24.  Plaintiff asserts he split his time between Formalwear's office in Miami, Florida and its corporate office in Avalon, New Jersey, where he worked the majority of the time.  See id. at ¶ 38.  As part of his employment agreement with Formalwear, Plaintiff asserts he was entitled to certain commissions on various accounts.  See id. at ¶¶ 34-35.  Plaintiff claims that Defendants owe him over $40,000 in unpaid commissions.  See id. at ¶ 36.

In August of 2013, Plaintiff experienced a heart-related medical issue, which he alleges he reported to Formalwear on August 31, 2013.  See id. at ¶¶ 41-43.  Two days after disclosing his medical issue to Formalwear, Plaintiff asserts that he received a voicemail from Defendant Alcantara informing him that he would be receiving a letter in the mail.  See id. at ¶ 45.  Eventually, Plaintiff received a letter, dated August 30, 2013, which Plaintiff alleges was backdated, terminating his employment effective September 1, 2013.  See id. at ¶¶ 46-48.  Plaintiff asserts that Formalwear terminated his employment because of his medical disability and because Plaintiff was one of the oldest employees at Formalwear.  See id. at ¶¶ 49-50, 52.  He further alleges that the Individual Defendants aided and abetted Formalwear in its discriminatory conduct.  See id. at 53.

Plaintiff alleges that after his termination, he learned that Defendants "rebrand[ed] and [sold] formal wear designs that [Plaintiff] developed and shared with Formalwear while he was still employed[.]"  Id. at ¶ 54.  Plaintiff further alleges that Formalwear did not request his

3

permission, nor did Plaintiff provide permission, for Formalwear to use, sell or profit from his designs.  See id. at ¶ 55.

On March 25, 2015, Plaintiff commenced this case by asserting the following claims:  (1) age discrimination against Defendant Formalwear under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; (2) disability discrimination against Defendant Formalwear under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; (3) age and disability discrimination against all Defendants under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1; (4); unpaid commissions against all Defendants under the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1; (5) unpaid commissions against all Defendants under the Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1; (6) breach of contract against Defendant Formalwear; (7) breach of the implied contract of employment against Defendant Formalwear; (8) breach of the implied partnership agreement against all Defendants; (9) conversion against all Defendants; (10) violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 against all Defendants; (11) unfair competition, passing of goods, trademark dilution, and trade dress infringement against all Defendants; (12) civil conspiracy against all Defendants; (13) promissory estoppel/detrimental reliance against Defendant Formalwear; (14) quantum meruit against all Defendants; (15) unjust enrichment against all Defendants; (16) fraud against all Defendants; (17) fraudulent inducement against all Defendants; (18) fraudulent inducement against all Defendants; and (19) tortious interference against all Defendants.

Defendants seek to dismiss the Second Amended Complaint in its entirety for lack of personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Def.'s Mot. to Dismiss, Jan. 12, 2015, D.E. 14.

In the alternative, Defendants move to transfer the case to the Southern District of Florida.  See id. The Court will first consider whether this matter should be transferred to the Southern District of Florida.

### III.  ARGUMENTS

Defendants contend that for the convenience of the parties and witnesses, this matter should be transferred to Florida.  In support of transfer, Defendants make two main arguments. First, Defendants contend that Plaintiff could have and should have filed this action in Florida because: (i) all parties reside in South Florida, and therefore Florida is the more convenient and cost-effective forum; (ii) New Jersey lacks personal jurisdiction over Defendants; (iii) Florida can rightfully exercise personal jurisdiction over each Defendant; and (iv) the operative facts surrounding Plaintiffs' allegations occurred in Florida and not in New Jersey.  See Mot. to Dismiss, at 9, 11-13, 16, Jan. 12, 2016, D.E. 14-1.

Second, Defendants argue that certain public and private factors favor transfer to Florida, including that the relevant evidence and witnesses are mainly located in Florida, the District of Southern Florida's docket is smaller and less congested, and litigation in Florida would be more cost-effective and convenient.  See id. at 16-17.

Plaintiff, on the other hand, asserts that this case should remain in this District because New Jersey, and not Florida, is the more convenient forum.  See Pl.'s Opp'n Br., at 22, Feb. 10, 2015, D.E. 18-2.  Plaintiff argues that he has a home in New Jersey and that his choice of forum merits deference.  See id.  Further, Plaintiff contends that his causes of action arose in New Jersey, that witnesses are located closer to New Jersey than Florida, and that Defendants are in a better financial position than Plaintiff and individual witnesses to travel out-of-state to litigate this

5

matter. See id. Finally, Plaintiff asserts that several of the claims are New Jersey state law claims, and therefore, New Jersey is the more appropriate forum to adjudicate this action. See id.

**IV.   DISCUSSION**

Under 28 U.S.C. § 1404(a), for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Abrams v. Gen. Nutrition Cos., Inc., 2006 WL 2739642, at *8 (D.N.J. Sept. 26, 2006) (citing 28 U.S.C. § 1404(a)).[1]  Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (internal citations and quotations omitted). The Third Circuit has recognized that the moving party bears the burden of establishing the need for transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973).

Transfer is appropriate under Section 1404(a) if the defendant satisfies two factors:  (i) that venue is proper in the transferee district, and (ii) that the transferee district can exercise personal jurisdiction over all parties. See Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). If venue in the requested district is proper, then the Court must analyze a series of private

---

[1] The Court may transfer a case even when it lacks personal jurisdiction over defendants. See 28 U.S.C. §§ 1404, 1406(a), 1631; see also Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962) (observing that "nothing in [its] language indicates that the operation of [28 U.S.C. § 1406(a)] was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants"); see also Verissimo v. Immigration and Naturalization Servs., 204 F. Supp. 2d 818, 820 (D.N.J. 2002) (recognizing that "a court may transfer a matter under 28 U.S.C. § 1406 to a court with personal jurisdiction over the defendant where venue is appropriate").

and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

### A. Filing of this Action in Florida

The Court must consider whether Plaintiff could have brought this case in Florida. See Abrams, 2006 WL 2739642, at *8 (citing 28 U.S.C. § 1404(a)). Specifically, the Court must examine where the case might have been brought as of the case's filing date. See Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007).

#### 1. Venue

In all civil cases, 28 U.S.C. § 1391 determines proper venue. Under § 1391(b), a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, Plaintiff does not appear to contest that venue is proper in the Southern District of Florida. Instead, Plaintiff argues that venue is also proper in New Jersey, and that New Jersey is a more convenient forum. See Pl.'s Opp'n Br., at 1-2, 14, 22, Feb. 10, 2015, D.E. 18-2. The

Court finds that the Southern District of Florida has venue under §§ 1391(b)(1) and (b)(2).[2]  All Defendants reside in or principally conduct business in Florida.  See Sec. Am. Compl., at ¶¶ 21-22, Mar. 25, 2015, D.E. 24; see also Alcantara Decl., at ¶¶ 1, 4-6, 38, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2.  Therefore, venue is proper in Florida under § 1391(b)(1).

Florida also has venue under § 1391 (b)(2) because a "substantial part of the events . . . giving rise to the claim[s]" occurred there.  The Third Circuit has emphasized that events or omissions supporting a claim must be "substantial," and that events or omissions with only "some tangential connection with the dispute in litigation are not enough."  Cottman Trans. Sys., Inc., v. Martino, 26 F.3d 291, 294 (3d Cir. 1994).  To assess "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute."  Id. at 295.  In his Second Amended Complaint, Plaintiff alleges that Defendants terminated his employment because of his age and medical disability.  See Sec. Am. Compl, at ¶¶ 1, 40-47, 61-84, Mar. 25, 2015, D.E. 24.  Defendants reside or principally conduct business in Florida.  See Alcantara Decl., at ¶¶ 1, 4, 6, 38, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2.  Thus, it follows that the decision to terminate Plaintiff, and Plaintiff's actual termination, both occurred in Florida.  Indeed, Defendants certify that the discussions concerning Plaintiff's employment, the decision to terminate Plaintiff, the drafting of the termination letter, and the mailing of Plaintiff's termination letter all occurred at Formalwear's office in Florida.  See Alcantara Decl., at ¶¶ 42-44, Dec. 3, 2014, D.E. 14-4.  The

---

[2] In this case, § 1391(b)(3) does not apply because the Southern District of Florida is a proper venue for adjudicating this action.

letter notifying Plaintiff of his termination was directed to Plaintiff at his Florida residence, and appears to have originated from Formalwear's Florida office.  Id. at Ex. F.  The Court therefore finds that a substantial part of the events giving rise to Plaintiff's claims occurred in Florida, and thus, that Florida properly has venue.  See Taube v. Common Goal Sys., Inc., 11-2380 (SDW), 2011 WL 5599821, at *5 (D.N.J. Nov. 1, 2011) (finding that a substantial part of the plaintiff's employment discrimination claim arose in Illinois, and not New Jersey, where the decision to terminate the plaintiff's employment was made in Illinois); see also Raffel, D.D.S. v. Monarch Dental Corp., No. 99-4571, 1999 WL 1212184, at *2 (E.D. Pa. Dec. 15, 1999) (finding that Texas was the proper venue for Plaintiff's age discrimination case because the defendant corporation was headquartered there and the decision to terminate the plaintiff was also made in Texas).

In addition, in Plaintiff's Second Amended Complaint, he asserts that Defendants failed to pay him commissions that were owed to him pursuant to certain contracts between the parties.  See Sec. Am. Compl., at ¶¶ 35-37, Mar. 25, 2015, D.E. 24.  Again, however, it appears that at the time period relevant to the claims, Defendants resided in and principally conducted business in Florida.  See Alcantara Decl., at ¶¶ 1, 4, 6, 38, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2.  Any decision regarding Plaintiff's payments under contracts for commissions or any breach of that contract must therefore have occurred in Florida.  Furthermore, Plaintiff's employment contracts with Formalwear were negotiated, drafted and executed at Defendants' Miami, Florida offices, not New Jersey.  See Alcantara Decl., at ¶¶ 9-11, Dec. 3, 2014, D.E. 14-4.  Moreover, for at least tax years 2006, 2007, 2008, 2009, 2011, and 2013, Formalwear sent Plaintiff's 1099 Forms from its Florida office to Plaintiff at his Florida residence.  Alcantara Decl., Ex. A, D.E. 14-4.  Thus, a substantial

9

part of the events giving rise to Plaintiffs' claims occurred in Florida. A similar analysis applies to Plaintiff's other alleged claims since they relate to Plaintiff's termination, which is the core of the dispute. This Court therefore finds that venue is proper in Florida under § 1391(b)(2).

### 2. Personal Jurisdiction

The Court also finds that the Southern District of Florida can properly exercise personal jurisdiction over Defendants. Personal jurisdiction may be exercised under two distinct theories: general or specific jurisdiction. Weber v. Jolly Hotels, 977 F. Supp. 327, 331 (D.N.J. Sept. 12, 1997). The Supreme Court recently clarified that courts may assert general jurisdiction over a corporation if that corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S.Ct. 746, 751 (2014). Regarding corporations, "the place of incorporation and principal place of business are [paradigm] bases for general jurisdiction." Id. at 760. For example, in Daimler, the Supreme Court concluded that no general jurisdiction existed where the subsidiary of an Argentinian company was neither incorporated in California nor did business in that state. See 134 S.Ct. at 761-62.

To determine whether specific jurisdiction may be exercised, the Third Circuit has suggested a three-factor test: (i) the defendant must have "purposefully directed" its activities at the forum state; (ii) the plaintiff's claim must "arise out of or relate to" at least one of the defendant's specifically directed activities in the forum state; and (iii) the courts may analyze other factors "to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice" and is "reasonable." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotations and citations omitted); see also Flynt Distributing Co., Inc. v. Harvey, 734

10

F.2d 1389, 1393 (9th Cir. 1984).

In this case, the Court concludes that Florida can assert personal jurisdiction over Defendants. Again, Florida is where Defendants conduct business and are located. See Alcantara Decl., at ¶¶ 1, 4, 6, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2. Thus, Florida has general jurisdiction over each Defendant. See Daimler, 134 S.Ct. at 761-62.

In addition, Florida likely has specific jurisdiction over each Defendant. Each Defendant has "purposefully directed" its activities at Florida, and Plaintiff's claims relate to those activities. For example, Formalwear is a Florida corporation that sells formal attire, and operates its administrative and sales offices in Miami, Florida. See Alcantara Decl., at ¶4-5, Dec. 3, 2014, D.E. 14-4. Plaintiff's claims are related to Formalwear's activities in Florida, because Plaintiff alleges that he was employed and wrongfully terminated by Formalwear. See Sec. Am. Compl., at ¶¶ 30-31, 47, 52, Mar. 25, 2015, D.E. 24. Accordingly, it appears that Florida has specific jurisdiction over Defendants.

The Court must next evaluate whether the transfer is in the interest of justice and "must consider both the private and public interests affected by the transfer." See Jumara, 55 F.3d at 879.

### B. Public and Private Factors

Having decided that venue is proper in the transferee district, the Court must next analyze whether private and public interests favor transferring this case. The private interest factors include: (i) plaintiff's choice of forum; (ii) defendant's preference; (iii) where the claim arose; (iv) the parties' convenience as indicated by their relative physical and financial condition; (v) witness

11

convenience; and (vi) the location of books and records.  See Jumara, 55 F.3d at 879.  The public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty arising from court congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable law.  See id. at 879-80.  Upon analyzing the record, the Court concludes that the public and private factors weigh in favor of transfer to the Southern District of Florida.

    **1. Private Factors**

        **i. Plaintiff's Choice of Forum/Defendant's Preference**

A plaintiff's chosen forum "is considered to be presumptively correct."  Wm. H. McGee & Co. v. United Arab Shipping Co., 6 F. Supp. 2d 283, 290 (D.N.J. 1997).  For this reason, a plaintiff's choice of forum will prevail "unless the party moving for the transfer can convince the court that its alternative forum is not only adequate, but more convenient than the present forum."  Celgene Corp. v. Abrika Pharm., Inc. No. 06-5818, 2007 WL 1456156, at *4 (D.N.J. May 17, 2007).  However, courts afford a plaintiff's choice less weight if "plaintiff has chosen a foreign forum or [if] the choice of forum has little connection with the operative facts."  Culp v. NFL Productions LLC, No. 13-7815 (NLH/JS), 2014 WL 4828189, at *4 (D.N.J. Sept. 29, 2014); see also Kelly-Brown v. Winfrey, No. 11-4360, 2011 WL 5325596, at *3 (D.N.J. Nov. 3, 2011) ("Plaintiffs are citizens of Florida [and appear] to have no connection to this state other than their selection of a New Jersey attorney to represent them").

Here, Plaintiff resides in Florida.  See Sec. Am. Compl., at ¶ 20, Mar. 25, 2015, D.E. 24. Although Plaintiff asserts that he has a home in Avalon, New Jersey, and that he will "likely . . . be

12

in New Jersey during the trial in this matter[,]" Plaintiff has not provided any credible evidence to establish that he is domiciled in this state. For example, Plaintiff has not provided the Court with a New Jersey driver's license or vehicle registration, evidence that he has assets or bank accounts in New Jersey, information concerning the location of his family, including his spouse, or any other information to credibly establish that Plaintiff is domiciled in New Jersey. See Curley v. Mosier, No. 09-2066 (JBS/AMD), 2010 WL 2521428, at *3 (D.N.J. June 15, 2010) (explaining that factors to consider in determining an individual's domicile are, among other things, "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration."). To the contrary, in his Second Amended Complaint, Plaintiff specifically alleges that he resides in Florida, see Sec. Am. Compl., at ¶ 20, Mar. 25, 2015, D.E. 24, and in his brief, Plaintiff concedes that, while he spends significant time here, he is not a New Jersey resident, see Pl.'s Opp'n Br., at 23, Feb. 10, 2015, D.E. 18-2. Therefore, because Plaintiff has chosen a foreign forum, New Jersey, to file this action, his choice of forum merits less weight. See Culp, 2014 WL 4828189, at *4.

Additionally, whether this Court has personal jurisdiction over all Defendants in this case is far from clear. For example, the Individual Defendants all reside in Florida. See Alcantara Decl., at ¶¶ 1, 4, 6, 38, Dec. 3, 2014, D.E. 14-4; Campo Decl., at ¶¶ 1, 4-5, Dec. 4, 2014; D.E. 14-3; Vallejo Decl., at ¶¶ 1, 4-5, Dec, 4, 2014, D.E. 14-2. In addition, the Individual Defendants assert that they do not have any contacts with New Jersey because they do not maintain any bank accounts in New Jersey, and do not own any property in New Jersey. See id. Plaintiff fails to provide any credible evidence to refute the Individual Defendants' assertions. Rather, Plaintiff makes bald assertions concerning the Individual Defendants' communications with him while he

13

was in New Jersey.  See Declaration of Dominic Yacovella ("Yacovella Decl."), at ¶¶ 25-29, Feb. 10, 2015, D.E. 18-3.  Plaintiff's assertions fall far short of establishing this Court's personal jurisdiction over the Individual Defendants.

In addition, Plaintiff contends that this Court has personal jurisdiction over Formalwear because:  (i) Formalwear has a corporate office in New Jersey; (ii) Formalwear does a substantial amount of business in New Jersey; and (iii) Plaintiff's claims arose in New Jersey.  See Pl.'s Opp'n Br., at 1-2, 9, 12, Feb. 10, 2015, D.E. 18-2.  Formalwear, on the other hand, contends that it has no meaningful contacts with New Jersey sufficient to warrant the Court's exercise of personal jurisdiction in this case.  See Alcantara Decl., at ¶¶ 6-8, 38-40, Dec. 3, 2014, D.E. 14-4.

Here again, a review of the record raises serious jurisdictional questions.  For example, Formalwear asserts that it has no offices in New Jersey, does a minimal amount of business in New Jersey, and does not have any assets, including property or bank accounts in New Jersey.  See Alcantara Decl., at ¶¶ 6-8, Dec. 3, 2014, D.E. 14-4.  Plaintiff, however, asserts that as a Formalwear employee, he split his time between the Miami office and his Avalon, New Jersey home.  See Yacovella Decl., at ¶¶ 1-2, 9, Feb. 10, 2015, D.E. 18-3.  Specifically, Plaintiff asserts that he worked approximately 60% of his time in New Jersey, making sales to New Jersey customers.  See id. at ¶¶ 16, 22.  Even assuming that Plaintiff conducted business in New Jersey,[3] it is difficult to understand how that would be sufficient to confer general jurisdiction over

---

[3] This conclusion is far from certain.  Plaintiff relies in part on a June 1, 2010, email from Alcantara to him to establish Formalwear's agreement to designate Plaintiff's New Jersey residence as Formalwear's New Jersey office.  Yacovella Decl., Ex. A, D.E. 18-3.  However, that email says nothing about a New Jersey office or using Plaintiff's residence as the New Jersey office.  Plaintiff also relies on a business card that purports to list a New Jersey office.  Id. at Ex. D.  However, the business card does not provide any New Jersey address.  Although it vaguely references a "NJ Office" and provides a telephone number with a (609) area code, the only address

the Defendants here, particularly given Plaintiff's possible status as an independent contractor. And it is equally difficult to determine how, even if Plaintiff conducted business in Avalon, that conduct would be sufficiently related to his alleged termination as to confer specific personal jurisdiction over the Defendants. Accordingly, there are substantial questions concerning whether Formalwear is subject to personal jurisdiction in New Jersey.[4]

Given that all parties, including Plaintiff, reside in Florida, and given the jurisdictional issues, this factor weighs in favor of transfer.

### ii. Where the Claims Arose

Plaintiff contends that his claims arose in New Jersey, not Florida. See Pl.'s Opp'n Br., at 12, 14, 26, Feb. 10, 2015, D.E. 18-2; see also Yacovella Decl., at ¶¶ 5-8, Feb. 10, 2015, D.E. 18-3. For example, regarding his age and disability discrimination claims, Plaintiff asserts that he received the termination letter in New Jersey, and thus, those claims arose in New Jersey.[5] See id. Defendants, on the other hand, claim that they mailed the termination letter to Plaintiff's home in Florida. See Alcantara Decl., at ¶¶ 45-46, Dec. 3, 2014, D.E. 14-4.

In Taube v. Common Goal Sys., Inc., the plaintiff brought a gender and pregnancy lawsuit

---

provided is Formalwear's corporate office in Florida, along with a telephone number and facsimile number that resolve to Formalwear's Florida office. Id.

[4] Because the Court has concluded that this matter should be transferred to the Southern District of Florida pursuant to § 1404(a), the Court need not decide the jurisdiction question. See LG Elecs. Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 584 n. 2 (D.N.J. 2001) (transferring the action to the Northern District of California pursuant to 28 U.S.C. § 1404(a) and declining to reach the issue regarding whether New Jersey had personal jurisdiction over the defendants).

[5] Notably absent from Plaintiff's opposition papers is any explanation concerning where his other claims arose. Other than arguing that he performed much of his work in New Jersey, Plaintiff does not appear to contend that each claim contained in the Second Amended Complaint arose in New Jersey.

15

against her former employer, an Illinois corporation, for allegedly terminating her employment because she was pregnant.  2011 WL 5999821, at *1-2.  The defendant corporation moved to dismiss the complaint for improper venue.  Id. at *2.  In determining whether venue was proper in New Jersey, the court dismissed plaintiff's arguments that because she was terminated in New Jersey, New Jersey was the proper venue to adjudicate her claims.  Id. at *4-5.  Instead, the Court found that "although plaintiff's termination letter was mailed to her New Jersey residence, the decision to terminate plaintiff, giving rise to her discriminatory discharge, occurred in Illinois."  Id. at *5.

Here, as in Taube, the issue of where Plaintiff's claims arose does not turn on where he received his termination letter.  Instead, the salient fact is where the decision to terminate Plaintiff occurred.  In this case, Defendants' discussions and decisions concerning Plaintiff's termination occurred in Florida, and therefore, Plaintiff's age and disability discrimination claims accrued in that state.  See Alcantara Decl., at ¶¶ 44-46, Dec. 3, 2014, D.E. 14-4.  Similarly, because Defendants are all located in Florida, a substantial amount of the events giving rise to Plaintiff's other claims also arose in Florida.  Finally, Plaintiff has failed to demonstrate, either in his pleading or in opposing Defendants' motion, that his claims for a share of the partnership and for theft of trade secrets have any nexus to New Jersey.  Accordingly, this factor weighs in favor of transfer to Florida.

### iii. The Convenience of the Parties

The parties' relative convenience based on their physical location and financial condition weighs in favor of transfer.  As discussed at length, all parties in this matter reside in Florida.  Thus, the Court concludes that this factor weighs in favor of transfer.

### iv. The Convenience of the Witnesses

A forum's inability "to compel the attendance of witnesses at trial is an important factor weighing in favor of transfer." Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A., No. 10-6457, 2011 WL 3329087, at *5 (D.N.J. Aug. 2, 2011) (citations omitted). When considering this factor, however, the pertinent inquiry is on the convenience of non-party witnesses. See In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998).

Here, Defendants assert that their witnesses are all located in the South Florida area. See Alcantara Decl., at ¶ 39, Dec. 3, 2014, D.E. 14-4. Plaintiff contends that the witnesses he intends to call at trial reside in New Jersey, Pennsylvania, New York, and other states around the country. See Yacovella Decl., at ¶¶ 34-36, Feb. 10, 2015, D.E. 18-3. It thus whether this case is litigated in Florida or in New Jersey, a non-party will inevitably be inconvenienced. Accordingly, this factor does not weigh for or against transfer.

### v. Location of Books and Records

This factor is also neutral. The parties appear to agree that many of the books and records are stored in Florida. See Mot to Dismiss, at 17, Jan. 12, 2015, D.E. 14-1; Pl.'s Opp'n Br., at 25, Feb. 10, 2015, D.E. 18-2; see also Alcantara Decl., at ¶ 39, Dec. 3, 2014, D.E. 14-4. No party, however, has demonstrated that adjudicating this case in New Jersey, or transferring it to Florida, will cause books or records to become unavailable or significantly more burdensome to produce. See Culp, 2014 WL 4828189, at *7 ("In our electronic age, this factor seems to carry less consideration [because books and records] are already in electronic format or can be saved electronically, and easily transported."). Thus, this factor does not weigh for or against transfer.

17

### 2. Public Factors

The Court now considers the public interest factors. When evaluating the public interest factors "the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 48 (3d Cir. 1988) (internal quotation and citations omitted).

Regarding the first factor, the enforceability of any judgment, the Court concludes that the factor weighs in favor of transfer. Defendants are all located in Florida, and therefore, a Florida court can enforce a judgment against Defendants with greater ease than this Court.

Moreover, the Southern District of Florida has a significantly stronger interest in deciding this controversy. All parties in this case reside in Florida. The decision to terminate Plaintiff, any misappropriation of trade-secret material, and any breach of contract, originated and emanated from there. And although Plaintiff also has a home here in New Jersey, it is clear to this Court that Plaintiff considers Florida his primary residence. Indeed, Plaintiff asserted that he resides in Florida in his Second Amended Complaint, and it appears that Plaintiff still actively conducts business in Florida. See Company Profile, Florida Dept. of State, Exh. E. to Alcantara Decl., Dec. 3, 2014, D.E. 14-4. Simply put, New Jersey maintains only a minor interest, public or otherwise, in adjudicating this case. The Southern District of Florida maintains a more direct connection, and a stronger interest in this case, given that all parties reside there. The remaining public interest factors do not defeat that conclusion.

In addition, Florida may be in a position to more quickly and efficiently adjudicate this matter than New Jersey. In support of transfer, Defendants have submitted court management and caseload statistics for the Southern District of Florida and the District of New Jersey for the

period of June 2008 through June 2013.   See generally Court Management Statistics and Judicial Caseload Profile for the Southern District of Florida and District of New Jersey ("District Mgmt. & Caseload Stats."), Exhs. A & B to Declaration of Sean M. Lipsky ("Lipsky Decl."), Dec. 5, 2014, D.E. 14-5.   The data contained in these reports indicates that New Jersey has a larger caseload.   For example, for the twelve month period ending on June 30, 2013, New Jersey had 8,543 pending cases to 6,764 for the Southern District of Florida.   Compare District Mgmt. & Caseload Stats for New Jersey, Exh. A to Lipsky Decl., with District Mgmt. & Caseload Stats for the Southern District of Florida, Exh. B to Lipsky Decl.   Similarly, the data indicates that cases in New Jersey take longer to adjudicate than in the Southern District of Florida, with New Jersey averaging 37.2 months from filing to adjudicate, compared with Florida's 16.1.   See id.   It therefore appears that the transfer to the Southern District of Florida may shorten the time to resolution for this matter.

For these reasons, and in the interests of justice, the Court finds that the public interest factors also tip the scales in favor of transfer.   See 28 U.S.C. § 1404(a).

V.   **CONCLUSION**

For the foregoing reasons, Defendants' motion to transfer the action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) is granted. The Court will deny as moot the motion to dismiss for lack of personal jurisdiction, improper venue, forum non conveniens and failure to state a claim.

An appropriate Order accompanies this Opinion.

                                              s/ *Michael A Hammer*
                                              **UNITED STATES MAGISTRATE JUDGE**

Dated:   August 31, 2015

20